IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-705-1 |
| | : | |
| v. | : | |
| | : | |
| WILLIE BROOKS | : | |

MEMORANDUM AND ORDER

P<small>RATTER</small>, J.                                                                                      O<small>CTOBER</small> 15, 2008

## INTRODUCTION

Willie Brooks has been charged in an Indictment with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The evidence prompting these charges, namely, a loaded Smith & Wesson 9mm handgun, serial number TZU2788, and a second loaded (11 rounds) magazine for the handgun, was seized during a search of the van that Mr. Brooks was driving on July 13, 2007. The search was conducted pursuant to a search warrant, the validity of which Mr. Brooks has challenged. The Court received legal briefs from the Government and on behalf of Mr. Brooks and held a hearing on October 2, 2008, during which counsel also presented their arguments orally. Having considered the evidence and arguments presented, and having closely reviewed the probable cause affidavit at issue, for the reasons discussed below, the Court declines to suppress the evidence seized as a result of the warrant authorizing the search of Mr. Brooks's car and concludes that the suppression motion should be denied.

## FACTUAL BACKGROUND

According to the July 16, 2007 probable cause affidavit prepared by Newtown Township

Detective John Harris,[1] at approximately 1:15 a.m. on July 13, 2007 Newtown Township police officers observed [2] a 1997 Pontiac Transport minivan run a red traffic light and commit a number of other harrowing traffic violations in rapid succession.  The minivan was being driven erratically at a high rate of speed, particularly once the driver apparently noticed the police car. The probable cause affidavit succinctly recounted that the chase did not end until after the minivan had rammed two police cars.  The chase ended at Tyler State Park in the Township.

The driver of the minivan was Mr. Brooks. Once Mr. Brooks was subdued after considerable effort by three officers, the police searched him and found (1) two pair of cloth gloves in his pockets, one pair of which had "stippling" (small raised rubber dots) on them, (2) two small flashlights, (3) a folding pocket knife, and (4) a screwdriver.  At the time, Mr. Brooks, an "older, tall but thin black male," was dressed in denim overalls and a dark-colored hooded sweatshirt.  The overalls bib buttons were covered with transparent cellophane tape.  He was wearing wire-rimmed glasses.

Det. Harris, the probable cause affiant, was called to the scene once Mr. Brooks had been secured.  Det. Harris recounted his personal observation from outside the minivan of an unzipped black duffle bag on the floor of the passenger side of the minivan.  He saw, protruding from the

---

[1] Det. Harris, who testified at the October 2, 2008 hearing in all material respects consistent with the information contained in his affidavit, has some 16 years' law enforcement experience, including participation in investigations and arrests arising from burglaries.  Det. Harris's pertinent experience was referenced in his affidavit to the District Justice who issued the search warrant.

[2] Police Officer Paul Deppi, the officer on duty at the time who made the initial observation of the minivan and gave chase, and ultimately participated in the arrest of Mr. Brooks all as described in the affidavit and in this Memorandum, testified at the October 2 hearing before the Court.

open bag, a portion of a Pennsylvania license plate (the minivan already had a license plate affixed properly above the back bumper) and more gloves. A closed red backpack was also in the black duffle bag. Det. Harris also saw within the open bag "several additional unidentifiable items."

The information conveyed to him about the vehicle chase, his own observations of Mr. Brooks, the nature of the items taken from Mr. Brooks' person, and the partial view of the bag's contents, all prompted Det. Harris to draw a possible connection between that information and recent reports of early morning (i.e., between 1 and 4 in the morning) residential burglaries in and around the County and its environs, including burglaries where the investigations demonstrated elements reminiscent of features presented by Mr. Brooks himself or material secured from him. Specifically, Det. Harris recalled - - and recounted in his affidavit - - that (1) the absence of fingerprints at the earlier burglary sites caused investigators to conclude that the burglar(s) wore gloves, (2) that window screens apparently used by the burglar(s) for ingress and egress into the invaded homes had small slices in them, (3) that at the site of one burglary "stippling" marks were observed on the window sill consistent with such marks as would be left by gloves like those taken from Mr. Brooks's person, (4) and that in one foiled burglary a homeowner confronted the burglar who was described by the homeowner as an older, tall, thin black male wearing wire-rimmed glasses and a dark, hooded sweatshirt and denim overalls and carrying a "lite flashlight."

Finally, Det. Harris included in his affidavit various additional observations to support the application for a search warrant. For example, he noted that in his professional experience "burglars often use gloves to avoid leaving latent prints, screwdrivers to use as a pry tool as well

3

as knives to cut window screens" - - all observations that rationally connect items secured from Mr. Brooks's person at the time of his arrest with recent reports of local home burglaries at least for purposes of applying for a search warrant to examine the inside of Mr. Brooks's car and the partially unzipped duffle bag.

Based on the foregoing, an appropriate Bucks County official, a county magistrate judge, issued a search warrant on July 16, 2007.  The subsequent search of Mr. Brooks's duffle bag and van produced the loaded Smith & Wesson 9 mm handgun registered to Mr. Brooks's girlfriend, Nora Cardona, the additional ammunition, the loose Pennsylvania license plate, a camouflage mask, an orange character mask of "The Thing", a buck knife, binoculars, two pairs of gloves (one cotton and one rubber), various maps of Pennsylvania, New Jersey and Maryland, a backpack from which many of these listed items were retrieved, a wallet with a driver's license in Mr. Brooks's name, credit cards in his name, a vehicle registration card in his name, $25 cash, another pair of gloves and a cellular phone.[3]

**DISCUSSION**

Mr. Brooks argues in a straightforward fashion that the affidavit supporting the application for the search warrant lacked the requisite probable cause to justify the search of the van and the duffle bag.  He contends that because the various items recovered from Mr. Brooks's person and seen from the cursory look into the van at the time of the arrest were not individually and inherently suspicious, reference to them by Det. Harris was insufficient to support a reasonable belief that crime-related paraphernalia would be found if the requested search warrant

---

[3]Certain post-search investigative information concerning the license plate, the handgun and the cellular phone developed by law enforcement authorities is not recounted here because it has no useful purpose in terms of resolving the issues raised by the suppression motion.

issued.  Therefore, Mr. Brooks argues that the search warrant was executed in violation of Mr. Brooks's Fourth Amendment right to be safe from unreasonable searches and seizures, and any evidence thus obtained must be characterized a "fruit of the poisonous tree" and excluded from his trial.  Wong Sun v. United States, 371 U.S. 471 (1963).

In response, the Government argues that the affidavit was sufficient to support the issuance of the search warrant and, even if it was not, the United States v. Leon, 468 U.S. 897 (1984) "good faith" exception to the exclusionary rule would apply here so that in any event the suppression motion should be denied.

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Const. Amend IV.  Evidence obtained pursuant to a warrant that does not comply with the Fourth Amendment requirements may be excluded from evidence at trial by the exclusionary rule.  Leon, 468 U.S. at 906 (noting, however, that the exclusionary rule is a judicially created remedy, not a constitutionally mandated one).

An affidavit in support of a search warrant must establish probable cause to believe that evidence of a crime will be found at the particular location, at the time of the search.  Illinois v. Gates, 462 U.S. 213 (1983).  As noted in Gates, "probable cause is a fluid concept - - turning on the assessment of probabilities in particular factual contexts - - not readily, or even usefully, reduced to a neat set of legal rules."  United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (citing Gates, 462 U.S. at 232).  Therefore, "the task of a magistrate is to 'make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jones, 994 F.2d at 1056 (citing Gates, 462 U.S. at

238).

This Court must give "great deference" to the probable cause determination of the issuing judge.  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) ("The Court need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." (quotations omitted)).  This Court may not engage in a de novo review of the warrant issuer's determination that probable cause was presented.  United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000).  Indeed, the Court is constrained to approach the decision to issue the search warrant with "great deference" for purposes only to ensure that the issuing authority "had a substantial basis for concluding that probable cause existed."  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993); see also Gates, 462 U.S. at 236; Spinelli v. United States, 393 U.S. 410, 419 (1969); United States v. Kepner, 843 F.2d 755, 762 (3d Cir. 1988).

The Third Circuit Court of Appeals has even embraced a more indulgent standard by describing the "substantial basis" standard as requiring the reviewing court to "determine only whether the affidavit proves a sufficient basis for the decision the [issuing authority] actually made."  Jones, 994 F.2d at 1057.  When in doubt, according to the Supreme Court, the reviewing court should resolve the issue "largely" by acknowledging "the preference to be accorded to warrants."  Gates, 462 U.S. at 237 n.10 (citation omitted).  Moreover, the court is obliged to consider the "totality of the circumstances," including the affiant's training and experience, the information recounted and the practicality of the common sense decision made by the issuing authority as to whether there was a "fair probability that contraband or evidence of a crime [would] be found in a particular place."  Id.

Here, the affiant who presented the warrant application possessed the requisite pertinent expertise that would allow the county magistrate judge to credit the detective's opinions that evidence of burglary paraphernalia likely would be found in the van.  See Whitner, 219 F.3d at 299.  The affiant attested to knowledge of recent burglary reports (including one eyewitness's description of an intruder that - - rudimentary as it was - - was consistent with Mr. Brook's appearance), observations of items that are known to be used by burglars to commit such crimes and contemporaneous furtive conduct by Mr. Brooks that was not inconsistent with common sense dictates of how someone fearful of interaction with law enforcement personnel would act.  Defense counsel emphasizes that the items taken or seen during the arrest that did not actually represent unambiguously illegal conduct (even if Mr. Brooks's driving was illegal.)  However, it was not necessary that all the facts recounted in the probable cause affidavit constitute direct proof of a crime; it can be sufficient for purposes of finding probable cause to infer probable cause by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]."  Jones, 994 F.2d at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)); see also United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997).  Likewise, common sense permits the acknowledgment that a limitless list of everyday "harmless" objects can, in the wrong circumstances, become handy "tools of the trade" of a criminal.  Indeed, it is hard to imagine a nighttime burglar who would try to break into a dark house without some means of creating limited but focused light (to wit, a small flashlight) and some means to poke, pry, or unfasten (to wit, a screwdriver and/or knife) and to do so without his hands slipping or leaving prints (to wit, with gloves).  That these tools are often used for good works does not mean they cannot be, or

were not, used for the commission of a crime. The Court concludes that, looking at the "four corners" of Det. Harris's affidavit, the issuance of the search warrant in this case meets the Gates test. The accumulated information that is presented in Det. Harris's affidavit provided the issuing authority with a sufficient considered basis to reasonably and rationally accept the Detective's experienced belief that evidence of illegal activities likely would be found in the van and duffle bag. See United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002); United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001): Whitner, 219 F.3d at 297-98.[4]

**CONCLUSION**

For the foregoing reasons, the evidence seized from the Brooks minivan and

---

[4]The Government also argues in the alternative that even if the Harris probable cause affidavit was deficient, the fruits of the search should not be suppressed on the strength of the "good faith" exception to the exclusionary rule enunciated by the Supreme Court in Leon. Even if the Court had not concluded that this warrant was properly issued, the record here contains no factual or advocated basis on which to "objectively ascertain" that the law enforcement officers who served this search warrant would have or could have - - or even should have - - "known that the search [of the van and duffle bag] was illegal despite the [Bucks County Magistrate Judge's] authorization." Leon's "good faith" exception to the exclusionary rule would be available as a basis on which to deny the suppression motion.

Likewise, because the Court concludes that the search warrant was properly issued, it is not necessary to address the Government second "fall back" position, namely, that the minivan would have been impounded for safekeeping in any event and the contents inventoried in keeping with standard law enforcement protocol. Det. Harris gave a credible description of that protocol, and it seems at first blush to be entirely reasonable that the police would not leave an unattended minivan with a broken window to the tender mercies of the night in a public park after having arrested its driver. Nonetheless, the Court need not adopt the Government's "inevitable discovery" argument in this instance because of the rulings outlined above, and the Court declines to do so on what may well be an incomplete record as to such an issue.

duffle bag will not be suppressed from use at trial in this case.  An appropriate Order accompanies this Memorandum.

                                          BY THE COURT:


                                            /s/ Gene E.K. Pratter  
                                          Gene E.K. Pratter  
                                          *United States District Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-705-1** |
| | : | |
| v. | : | |
| | : | |
| **WILLIE BROOKS** | : | |

**O R D E R**

AND NOW, this 14th day of October, 2008, having considered Defendant's Motion to Suppress Physical Evidence (Doc. No. 20) and the Government's opposition (Doc. No. 21) and having conducted an evidentiary hearing on October 2, 2008 followed by counsel's oral argument, it is hereby **ORDERED** that the Motion is **DENIED** for the reasons set out in the accompanying Memorandum.

BY THE COURT:

   /s/ Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*