# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| WILLIE BROOKS | : | NO. 07-705-1 |

## SECOND AMENDED MEMORANDUM

P<small>RATTER</small>, J.                                                                                                        MAY 21, 2010

Attended by experienced and conscientious counsel, but without a plea agreement with the Government, Willie Brooks pleaded guilty on January 26, 2009, just as his oft-continued trial on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g) and as an armed career criminal pursuant to 18 U.S.C. §924(e) was about to commence .

The charges against Mr. Brooks emanated from a early morning July 13, 2007 car chase when Newtown Township Police Officer Deppi observed a minivan, driven by Mr. Brooks, speed through a red light.  Officer Deppi, joined by fellow Officer Christopher Joseph, gave chase, ultimately cornering and stopping the Brooks minivan, but not before Mr. Brooks had run into both patrol cars.  Once stopped, Mr. Brooks refused to put his hands up, and, with alarm, the officers observed him reach toward the passenger seat.  This prompted Officer Joseph to hasten to the passenger side of the minivan with his gun drawn.  Because the mid-chase collision had damaged the minivan passenger door mechanism, Officer Joseph had to break the passenger window, injuring himself in the process.  Meanwhile, Officer Deppi's use of a Taser to stun the uncooperative Mr. Brooks only partially subdued the Defendant as the police removed him from the van and handcuffed him.

During the ensuing search of Mr. Brooks' person, the police found a screwdriver, flashlight and gloves. The minivan, registered to Mr. Brooks, was towed while a search warrant for the vehicle was sought. During that process, the police simultaneously learned that Mr. Brooks was on county probation and had a lengthy criminal history of convictions for residential burglaries.

In the course of the search of the minivan pursuant to the issued warrant, detectives seized a black duffle bag in which they found a Smith & Wesson 9mm handgun registered to Mr. Brooks' live-in girlfriend. The gun was loaded with 15 rounds, including one in the chamber. The duffle bag also produced a Pennsylvania car registration plate that police ultimately determined was stolen, a camouflage mask, an orange character mask of "The Thing," a buck knife, binoculars, two pairs of gloves, another magazine containing 11 rounds for the handgun, a back pack and a collection of maps of Pennsylvania, Maryland and New Jersey. Elsewhere in the minivan, the police retrieved a wallet containing a driver's license and credit card all in the name of Willie Brooks, a vehicle registration also in his name, $25 in U.S. currency, a fourth pair of gloves and a cell phone.

The Pennsylvania State Police Crime Lab later determined that the handgun was a ballistics match to bullets fired at police during a December 6, 2006 incident in Radnor Township. The Radnor event involved police response to a 3:30 a.m. 9-1-1 call concerning a prowler in a residential area. Fleeing, the prowler shot at police. Within an hour of the shooting Mr. Brooks had made a cellular phone call to his girlfriend from nearby Wynnewood, during which he made arguably incriminating statements. Mr. Brooks' girlfriend later pled guilty to being a straw purchaser of the gun for Mr. Brooks.

Mr. Brooks was indicted for both the Newtown and Radnor incidents. The Federal Division of the Defenders Association of Philadelphia was appointed to represent Mr. Brooks. Kai Scott, Esq. entered her appearance on Mr. rooks's behalf. In the course of her representation of Mr. Brooks, Ms. Scott filed and pursued a motion to suppress evidence seized during the searches described above. Ultimately, following an evidentiary hearing during which both counsel vigorously examined the witnesses and ably argued their respective positions, the suppression motion was denied. Trial was scheduled and rescheduled, finally for January 26, 2009.

Instead of selecting a jury, on January 26, 2009 Mr. Brooks, with Ms. Scott at his side, pled guilty in a 50 minute hearing. Among other matters, during the ensuing colloquy, Mr. Brooks, who has a full high school and vocational training school education, having been sworn,

- acknowledged that he was under oath, was obliged to tell the truth and was at risk for a perjury prosecution if he told the Court untruths

- stated that he had counsel, had sufficient time to confer with his counsel and was satisfied with his attorney's advice and representation

- stated that he fully understood the charges against him and fully understood that pleading guilty would mean he was voluntarily and deliberately giving up his myriad of important constitutional and statutory rights relating to the charges, the prosecution and appellate options

- acknowledged that he had no agreement with or promises from the Government in exchange for the guilty plea

- acknowledged that he knew he had an absolute right to proceed to trial if

3

he chose not to plead guilty, with or without a jury, at which he would have all of his guaranteed rights

- listened to the Assistant U.S. Attorney recite the alleged facts of the case as known by the Government and, with the exception of admitting wholesale his armed career criminal status at the time or as part and parcel of the Newtown and Radnor events, admitted to having committed the acts alleged, which he agreed were accurately portrayed and described by Government's counsel

- agreed that he could be sentenced, at the Court's discretion, after consultation of the Sentencing Guidelines, up to the remainder of his life in prison, with a mandatory minimum sentence of 15 years in prison

- accepted the fact that even if the Court concluded that he earned a sentence harsher than he or his lawyer anticipated, or if he disagreed with the recitations of the Pre-Sentence report, he nonetheless would be unable to withdraw his guilty plea

- reiterated his desire to plead guilty of his own free will, even after hearing all the rights he would be abandoning and the risks he would be facing

- declined the Court's invitation to address the Court or tell the Court anything more he would like to impart at the time

- straight forwardly pled guilty to counts 1 and 2 because he was "guilty as charged."

Following Mr. Brooks' guilty plea, his sentencing was scheduled originally for late April

2009, and then continued to early June, when Mr. Brooks announced that he wanted a new attorney and wanted to withdraw his guilty plea. New counsel was promptly appointed. Notwithstanding periodic suggestions that a motion to withdraw the January 26, 2009 guilty plea was forthcoming[1], none was filed until the eve of the most recently set sentencing hearing, to wit, November 24, 2009. As a result, sentencing was again cancelled and an evidentiary hearing on the motion was set for and held on December 10, 2009.

The upshot of Mr. Brooks' claim was that he entered a guilty plea even though he is innocent of the charges. Apparently, Mr. Brooks did not believe his attorney was prepared to proceed to trial. Mr. Brooks and his prior counsel, Ms. Scott, testified at the December 10 hearing. Mr. Brooks testified, again under oath, that he felt more or less coerced into entering a guilty plea because it was "unclear" to him what his defense counsel's trial strategy was. In essence, Mr. Brooks testified that he chose to plead guilty because he believed his lawyer had prepared no defense. He also testified about having been in a quandary about his sentencing risks, given his significant criminal history. Mr. Brooks also presented lengthy, but confusing, and ultimately irrelevant testimony about matters he learned only <u>after</u> he pleaded guilty, which matters he believed demonstrated his lawyer's lack of ardor on his behalf. He admitted that what his lawyer actually had told him was that it would "be hard" to mount a defense to the charges. He also admitted that although he now purports to have an alibi defense should he be allowed to proceed to trial, he did not then share that information with his lawyer. In response to extremely

---

[1] On more than one occasion, the Court and both prior and current counsel took specific steps to underscore for Mr. Brooks how challenging such a motion can be. In particular, the Court required that Mr. Brooks be given a copy of the full transcript of his guilty plea hearing so that he could assess the magnitude of his prior sworn statements to the Court about his guilt and his exercise of free will in entering the guilty plea.

5

close - -virtually leading - - questioning by his counsel, Mr. Brooks eventually testified that he pled guilty because he had been under the impression that by doing so he would receive less than the mandatory minimum of 15 years imprisonment, because he did not think his lawyer was ready to go forward, and because he "believed [he] had no other choice." This was also his stated excuse for telling the Court a host of now admitted untruths when he pled guilty.

Under cross-examination, Mr. Brooks admitted that his prior attorney had previously sought numerous continuances on his behalf at his request rather than to start the trial or proceed to his sentencing. He also had to admit that virtually all of his occasions of complaint about discovery in the case post-dated the date of the guilty plea. He also confirmed his prior answers to the lengthy basic litany of standard questions posed by the Court before acceptance of a guilty plea.

The Court also questioned Mr. Brooks to confirm that no one had chided, goaded or enticed Mr. Brooks to plead guilty in any fashion, or to testify falsely. In essence, Mr. Brooks' December, 2009, like his January, 2009 testimony was voluntary, knowledgeable and with the benefit of counsel.

Mr. Brooks' prior lawyer, Kai Scott, a 13 year veteran of the Defenders Association, also testified. She confirmed her efforts to review the case with Mr. Brooks prior to trial and to assess the practicalities of the case. She assessed his chances for him and she diligently prepared his defense, up to and including repeated requests for continuances to retain investigators, pursue ballistic experts or testing, and the like. Ms. Scott testified that on the eve of the January 26, 2009 trial date, although Mr. Brooks' defense would be challenging, she was prepared to proceed. She never stated or intimated to Mr. Brooks that she was not ready to go forward. She

did, for good reason, tell Mr. Brooks her honest assessment that his would be a difficult case. She was fully aware that for as long as she had been representing Mr. Brooks he had eschewed pleading guilty so she did not pursue that option for him. On the Friday before the Monday on which his trial was to start, Mr. Brooks first informed Ms. Scott, to her surprise, that he wanted to plead guilty. Ms. Scott testified that she counseled Mr. Brooks that he would be held to be an armed career criminal and would be subject to a mandatory 15 year minimum sentence. She also discussed with him other potential enhancements that the Government would likely pursue. In response to the Court's questioning, Ms. Scott stated without equivocation that on the eve of trial when Mr. Brooks inquired as to her readiness, she said to him that she was ready. She also testified that once Mr. Brooks proposed to plead guilty, Ms. Scott fully advised him as to the questions that he would have to answer as part of the Court's "lengthy colloquy" into the propriety of his guilty plea.

The Court denied Mr. Brook's Motion to withdraw his guilty plea because he failed to meet his substantial burdens under Federal Rule of Criminal Procedure 11(d) to demonstrate a "fair and just" reason to withdraw his guilty plea. <u>United States v. Jones</u>, 336 F.3d 245, 252 (3rd Cir. 2003), citing <u>United States v. Hyde</u>, 520 U.S. 670, 676-77 (1997). On the contrary, when considered through the prism of his repeated efforts to delay and avoid the ultimate conclusion of this prosecution, it is not difficult to view Mr. Brook's Motion as representing his refusal to acknowledge a guilty plea as a "grave and solemn act", <u>Brody v. United States</u>, 397 U.S. 742, 748 (1970). Indeed, Mr. Brooks appears to believe he is entitled to indulge his whims to change his plea - - and his counsel - - without regard for the integrity of the judicial system.

Pursuant to <u>United States v. Brown</u>, 250 F.3d 811 (3rd Cir. 2001), the Court has

considered (1) whether Mr. Brooks actually asserted his innocence; (2) whether the Government would be prejudiced by the withdrawal; and (3) the strength of his reasons for withdrawing his guilty plea. The Court has found Mr. Brooks' presentation meager and disingenuous. Even if with the benefit of the doubt his stated desire to have a trial was to be accepted as the functional equivalent of the required assertion of innocence, Mr. Brooks has provided no record facts to "buttress" any such assertion with any recognizable defense. United States v. Brown, 250 F.3d at 818. His excuses for having taken numerous contradictory positions under oath at his guilty plea hearing as compared to his December 10 story were, to say the least, unpersuasive and disrespectful, not only of the Court but of his own character and the value of his word. Moreover, his latest reasons for pleading guilty - - and his reasons for wanting to withdraw that plea - - are simply not credible, especially in the face of Ms. Scott's wholly credible account recounting the circumstances leading up to and surrounding Mr. Brooks' guilty plea.

Accordingly, although Mr. Brooks may have lately come to regret - - for some elusive reason - - the consequences of his own knowing and voluntary actions, the Court has no doubt that at the time he entered his guilty plea he did so with a full appreciation of the import of his actions, admitting all the facts attendant to the elements of the crimes with which he was charged. The Court is equally certain that Mr. Brooks' 11th hour allegations against his former attorney are without merit and are unavailing to him as a basis upon which to permit a wholesale

abandonment of his many sworn statements at his guilty plea hearing.  Therefore, Mr. Brooks' Motion is denied and an order to that effect follows.

BY THE COURT

 /s/ Gene E.K. Pratter
Gene E. K. Pratter
*United States District Judge*